

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00342-CV

Annie Cervantes **RAMIREZ**,
Appellant

v.

**FFE TRANSPORTATION SERVICES, INC.** and Conwell LLC,
Appellees

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-07893
Honorable Fred Shannon, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  April 3, 2013

REVERSED AND REMANDED

Annie Ramirez appeals the trial court's grant of FFE Transportation Services, Inc. and Conwell, LLC's (FFE and Conwell) cross-motion for summary judgment and the denial of her motion for summary judgment. In a single point of error, Ramirez complains that the liability release she signed fails to meet the fair-notice requirements for releases of future liability. Because we agree the release fails to meet the standard for fair notice, we reverse the judgment of the trial court and remand the cause for further proceedings.

## BACKGROUND

Ramirez's husband was employed by FFE and Conwell to drive an 18-wheeler. In order to ride with her husband while he was traveling, FFE and Conwell required Ramirez to sign a document entitled "Indemnity, Hold Harmless Agreement and Release." In March of 2008, Ramirez was injured in a single-vehicle accident while riding in the 18-wheeler her husband was driving. Thereafter, Ramirez filed a negligence suit against FFE, Conwell, and her husband. In their third amended answer, FFE and Conwell alleged that Ramirez's claims against FFE and Conwell were barred by the release she signed. Both parties filed motions for summary judgment on the issue of whether the release met the requirements of fair notice and thereby barred Ramirez's claims against FFE and Conwell. The trial court denied Ramirez's motion for summary judgment and granted FFE and Conwell's cross-motion for summary judgment, determining that Ramirez's claims were barred by waiver.[1] Ramirez then pursued this appeal.

## STANDARD OF REVIEW

We review a trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Longoria v. Lasater*, 292 S.W.3d 156, 162 (Tex. App.—San Antonio 2009, pet. denied). A party should be granted summary judgment only if it proves all elements of its cause of action or affirmative defense. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001); *see also TIG Ins. Co. v. San Antonio YMCA*, 172 S.W.3d 652, 655–56 (Tex. App.—San Antonio 2005, no pet.). When both parties file motions for summary judgment and the trial court grants one motion and denies the other, the reviewing court must consider the evidence presented by both parties and determine all questions presented to the trial court. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73

---

[1] Subsequently, the trial court granted Ramirez's motion to sever her claims against FFE and Conwell from her claim against her husband.

(Tex. 2000); *TIG Ins. Co.*, 172 S.W.3d at 655–56. It is the duty of a reviewing court to "render the judgment that the trial court should have rendered." *Wolf*, 44 S.W.3d at 566; *see also FM Props. Operating Co.*, 22 S.W.3d at 872–73.

## FAIR NOTICE OF RELEASED CLAIMS

Parties seeking to exculpate themselves from their own negligence must provide fair notice of their intent to do so. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508–09 (Tex. 1993). Fair notice of a release of future liability exists when the terms of the release comply with the express negligence doctrine and are conspicuous. *Id.* at 508; *Tamez v. Sw. Motor Transp., Inc.*, 155 S.W.3d 564, 569 (Tex. App.—San Antonio 2004, no pet.). Whether a release of liability meets the fair notice requirements is a question of law for the court. *Dresser Indus.*, 853 S.W.2d at 509. Because we conclude that the release at issue did not satisfy the express negligence doctrine, we do not address whether the terms of the release were conspicuous. *See* TEX. R. APP. P. 47.1.

In support of her claim that the release language used in this case does not satisfy the express negligence rule, Ramirez primarily relies on three cases: *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991); *Ethyl Corp. v. Daniel Const. Co.*, 725 S.W.2d 705, 707–08 (Tex. 1993); and *Trinity Indus., Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 869 (Tex. App.—Austin 2001, pet. denied). Although we agree with FFE and Conwell that these cases are factually distinguishable, the general rules outlined in these cases still guide our decision.

The express negligence doctrine requires the party seeking avoidance of future liability for its own negligence to "express that intent in specific terms within the four corners of the contract." *Dresser Indus.*, 853 S.W.2d at 508; *see also Ethyl Corp.*, 725 S.W.2d at 707–08. This means the claim must clearly be within the subject matter of the release clause. *Brady*, 811 S.W.2d at 938. Indeed, a claim will not be released unless it is mentioned in the instrument. *Id.*;

*Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 719 (Tex. App.—San Antonio 1994, writ denied).

This rule does not necessarily require the word "negligence" to be used in order for the claim to be "mentioned." *Lehmann v. Har-Con Corp.*, 76 S.W.3d 555, 562 n.3 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Banzhaf v. ADT Sec. Sys. Sw., Inc.*, 28 S.W.3d 180, 189 (Tex. App.—Eastland 2000, pet. denied). It does, however, require some express language that would indicate an intention to waive claims of a party's own negligence. *Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 815–16 (Tex. 1994); *Lehmann*, 76 S.W.3d at 562 n.3. *Compare Texas Eng'g Extension Serv. v. Gifford*, No. 10-11-00242-CV, 2012 WL 851742, at *2–4 (Tex. App.—Waco Mar. 14, 2012, no pet.) (mem. op.) (declaring that the release provided notice of the appellant's intent to be held blameless for its own negligence related to the appellee's fall when the instrument released the appellant from all liability arising out of personal injury, specifically stating the risk of falling), *and Banzhaf*, 28 S.W.3d at 189 (determining that an agreement to indemnify the appellee for "failure of its equipment or service in any respect" adequately expressed the appellee's intent to be indemnified for claims based on its negligence), *with Stanford v. Evans*, No. 14-08-00776-CV, 2010 WL 2517675, at *3 (Tex. App.—Houston [14th Dist.] June 24, 2010, no pet.) (mem. op.) (stating that a broad provision purporting to hold a party harmless from "any claims or damages no matter how caused" does not reflect a specific and unambiguous intent to waive liability for that party's negligent acts), *and Trinity Indus.*, 53 S.W.3d at 869 (concluding that a release from "all claims . . . and liabilities . . . of any nature whatsoever" was not sufficiently specific to bar claims for negligent misrepresentation and fraud under the express negligence doctrine).

Moreover, in order to effectuate important policy interests, "general categorical release clauses are narrowly construed." *Brady*, 811 S.W.2d at 938; *Duncan v. Cessna Aircraft Co.*, 665

S.W.2d 414, 422 (Tex. 1984). The express negligence rule was adopted in Texas to protect unsuspecting parties to a contract from "the extraordinary shifting of risk" that occurs when the other party seeks to exculpate itself from its own future negligence. *See Green Intern., Inc. v. Solis*, 951 S.W.2d 384, 387 (Tex. 1997); *Dresser Indus.*, 853 S.W.2d at 508. In *Ethyl Corp. v. Daniel Construction Co.*, the Texas Supreme Court explained that the express negligence rule is intended to prevent scriveners from releasing or indemnifying a party for its own negligence in advance, yet drafting the exculpating instrument "just ambiguous enough to conceal that intent." 725 S.W.2d at 707–08.

The portion of the release at issue provides:

> It is further agreed that Sponsoring Driver and Guest Passenger . . . hereby waive any and all claims, rights, and cause[s] of action which either or both of them may have in the future against Motor Carrier, it[]s parents, subsidiaries[,] and/or related entities, and hereby release, discharge, quit-claim[,] and give up unto Motor Carrier, it[]s parents, subsidiaries, and/or related entities harmless from any claim[,] loss[,] or cause of action by Guest Passenger or by his/her[] heirs, personal representatives, successors[,] and/or assigns arising out of any occurrence in connection with travel whenever occurring.

> It is further understood and [a]greed that any indemnification and hold harmless agreement provided for herein shall also insure to the benefit of Motor Carrier, it[]s parents, subsidiaries[,] and[/]or related entities and their assigns, agents, representatives[,] or indemnitors for any claims, demands[,] and causes of action arising, directly or indirectly[,] out of any occurrence(s) in connection with the terms of agreement of travel.

This language essentially says that Ramirez "waive[s] any and all claims, rights, and cause[s] of action . . . against Motor Carrier . . . arising out of any occurrence in connection with travel whenever occurring." In fact, FFE and Conwell state almost this exact same summation of the release agreement in their brief to this court. FFE and Conwell assert that this language eliminates the concerns announced in *Ethyl* because they did not try to conceal the claims for which they sought a release of liability but, instead, clearly indicated their intention to be released from any claim related to Ramirez's travels with her husband. Texas, however, places a

premium on the policy that a party not be allowed to, in advance, release itself from its own negligence without providing the unsuspecting participant a clear statement indicating this intention.

FFE and Conwell also cite *Texas Engineering Extension Service v. Gifford* as authority for their assertion that the release agreement with Ramirez meets the express negligence standards. *Gifford* involved a release agreement signed before participants began fire brigade training, during which Gifford fell and injured himself. 2012 WL 851742, at \*2. Specifically, the release provided:

> 1. In consideration for receiving permission to participate in Emergency Response Training, including but not limited to fire and rescue training, on behalf of my agency/organization, I hereby release, indemnify, and covenant not to sue the Texas Engineering Extension Service (TEEX), the Texas A & M University System, the State of Texas, their officers, agents or employees (Releasees) from any and all liability, claims, costs and causes of action arising out of or related to any property damage or personal injury, including death, that may be sustained by me, while participating in such activity, or while on the premises owned or leased by Releasees. I acknowledge there may be physically strenuous activities. I know of no physical or mental condition which would preclude my full participation.
>
> 2. I am fully aware of the risks and hazards involved with Emergency Response Training, including but not limited to *burns, heat stroke, heart attack, heat exhaustion, falls, and other related injuries,* and I choose to voluntarily participate in said activity with full knowledge that said activity may be hazardous to me and my property.

*Id.* at \*2–3. The clause used in *Gifford* would be analogous to the one used in the case at hand if it released TEEX "from any and all liability, claims, costs, and causes of action arising out of [Gifford's] participation in such activity." Instead, the language in TEEX's release was much more specific and provided notice of the exact types of claims for which TEEX sought exculpation. Indeed, Gifford was injured as the result of a hazard (falling) specifically listed in the second paragraph of the release. *Id.* Thus, we conclude that the more specific language used

in the release agreement in *Gifford* is distinguishable from the general language used in the release in this case.

In their brief to this court, FFE and Conwell also briefly appear to argue that the fair-notice requirements should not apply in this case because Ramirez did not claim that her injuries were a result of FFE and Conwell's direct negligence but, instead, that FFE and Conwell were vicariously responsible for the negligence of their employees. Because the fair-notice requirements apply when a party attempts to procure a waiver of liability for claims resulting from its own negligence, FFE and Conwell contend that we should not consider the elements of fair notice where, as they assert here, the claim against them is not based on direct acts of negligence by FFE and Conwell. We decline to consider this argument, however, because it was not presented to the trial court. *See* TEX. R. APP. P. 33.1; *FM Props. Operating Co.*, 22 S.W.3d at 872–73 (stating that a reviewing court should consider only the questions presented to the trial court); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) ("A motion [for summary judgment] must stand or fall on the grounds expressly presented in the motion.").

CONCLUSION

We conclude that to the extent Ramirez asserts a claim for negligence against FFE and Conwell, the release does not bar Ramirez's claim. Accordingly, we reverse the judgment of the trial court and remand this cause for proceedings not inconsistent with this opinion.

Karen Angelini, Justice